**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE ) | |
| 1899 L Street, N.W., 12th Floor ) | |
| Washington, D.C. 20036 ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|   v. ) | Civil Action No. 14-1806 |
| ) | |
| OFFICE OF SCIENCE AND ) | |
|  TECHNOLOGY POLICY ) | |
| Eisenhower Executive Office Building ) | |
| 1650 Pennsylvania Avenue, N.W. ) | |
| Washington, DC 20504 ) | |
| ) | |
|     Defendant. ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff COMPETITIVE ENTERPRISE INSTITUTE (CEI) for its complaint against Defendant

OFFICE OF SCIENCE AND TECHNOLOGY POLICY (OSTP), alleges as follows:

1) This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel

production under a request for OSTP records related to *The Polar Vortex Explained in 2*

*Minutes,* a video posted on the White House web site about global warming supposedly caus-

ing severe winter cold.

2) In June 2014, OSTP refused to collect alleged inaccuracies in that video that CEI had formal-

ly brought to its attention.  It justified its refusal by claiming the video was just the "personal

opinion" of its Director, John P. Holdren.

3) But when CEI submitted a FOIA request for documents related to the video, the agency with-

held most of them. It claimed those documents could be withheld in their entirety pursuant to

the deliberative process privilege, which allows agencies to withhold portions of documents containing agency deliberations directly related to formulation of agency rules and policies.

4)  The requested documents are not related to any agency rule or regulation, nor are they antecedent to the adoption of any government policy.  Nor has OSTP explained how they could be, since OSTP itself has claimed they merely reflect the "personal opinion" of certain of its staff. Thus, these withheld documents are agency records subject to disclosure under FOIA, and not properly withheld under any FOIA exemption.

5)  By denying CEI these records, OSTP has left CEI no recourse but to bring this lawsuit to compel the agency to comply with the law.

## PARTIES

7)   Plaintiff CEI is a public policy research and educational institute in Washington, D.C., dedicated to opposing overregulation and to promoting economically sustainable environmental policy.  CEI's programs include research, investigative journalism and publication, as well as a transparency initiative seeking public records relating to environmental policy and how policymakers use public resources.

8)  Defendant OSTP is a FOIA-covered, congressionally established office within the executive branch that "advise[s] the President and others within the Executive Office of the President on the effects of science and technology on domestic and international affairs," located in Washington, D.C. next to the White House.

## JURISDICTION AND VENUE

9)  This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this action is brought in the District of Columbia and 28 U.S.C. § 1331 because the resolution of disputes under FOIA presents a federal question.

10) Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) be-
cause Plaintiff resides in the District of Columbia, and defendant is federal agency.

## FACTUAL BACKGROUND

11) On April 14, 2014, CEI submitted a Request for Correction under the Data Quality Act (also
known as the Information Quality Act)[1], seeking correction of two claims made by OSTP
employees about global warming supposedly causing the severe winter cold of 2013-14.  This
claim had been questioned by many scientists and commentators.[2]  CEI specifically sought
correction of the following two claims:

(a) A statement by OSTP Director John P. Holdren in the video *The Polar Vortex Explained
in 2 Minutes*, which was posted on the White House web site on January 8, 2014.[3]  In that
video, Dr. Holdren claimed that "a growing body of evidence suggests that the kind of

---

[1] *See* Public Law 106-554, § 515, 114 Stat. 2763, 2763A-153 to 2763A-154 (2000), 44 U.S.C. § 3516, note.

[2] *See, e.g.,* Jason Samenow, *Scientists: Don't make "extreme cold" centerpiece of global warming argument*, Wash-
ington Post, Feb. 20, 2014, http://www.washingtonpost.com/blogs/capital-weather-gang/wp/2014/02/20/scientists-
dont-make-extreme-cold-centerpiece-of-global-warming-discussions/ (linking to John M. Wallace, Isaac M. Held,
David Thompson, Kevin Trenberth & John Walsh, *Global Warming and Winter Weather*, Letters, *Science*, Vol. 343,
pp. 729-30 (Feb. 14, 2014), www.sciencemagazinedigital.org/sciencemagazine/14_february_2014?pg=29#pg29 );
Patrick J. Michaels & Paul C. "Chip" Knappenberger,  *Hot Air About Cold Air*, Cato At Liberty, January 16, 2014
5:36PM (www.cato.org/blog/hot-air-about-cold-air) (former state climatologist of Virginia rejects Holdren's claim).

[3] Posted at http://www.whitehouse.gov/photos-and-video/video/2014/01/08/polar-vortex-explained-2-minutes and
http://www.whitehouse.gov/share/polar-vortex-explained-in-two-minutes.

It is also one of two related videos posted elsewhere on a White House blog on January 8. *See We the Geeks: "Polar
Vortex" and Extreme Weather*, Posted by Becky Fried on January 8, 2014 at 5:37 PM EDT, available at
http://www.whitehouse.gov/blog/2014/01/08/we-geeks-polar-vortex-and-extreme-weather.  The second video from
the top (at this URL), bearing the legend "THE CONTINENTAL UNITED STATES, JANUARY 7, 2014," is the
video containing Dr. Holdren's remarks.  The first video, which is above it, contains comments touting Dr.
Holdren's "two minute video" as "explaining the polar vortex" and discussing its link to "changing climates."

The video is also embedded at various news and web sites.  *See, e.g.,* Chris Mooney, *"Breathtaking": The White
House Releases Its Climate Heavy Hitter on the Polar Vortex,* Mother Jones, Jan. 15, 2014
(http://www.motherjones.com/blue-marble/2014/01/john-holdren-video-polar-vortex).

extreme cold being experienced by much of the United States as we speak is a pattern that we can expect to see with increasing frequency as global warming continues."[4]

(b) A January 8th OSTP blog post by OSTP Senior Communications Advisor and Web Editor Becky Fried that claimed that "we also know that this week's cold spell is of a type there's reason to believe may become more frequent in a world that's getting warmer, on average, because of greenhouse-gas pollution."[5]

12) On June 6, 2014, OSTP responded to this request, concluding that Dr. Holdren's and Ms. Fried's statements were "personal opinion," not the agency's position, and that they thus did not constitute agency "information" subject to the Information Quality Act. OSTP denied CEI's request for correction, citing OSTP guidance exempting "subjective opinions" from the reach of the Information Quality Act."[6] OSTP's letter denying CEI's request asserted that these claims were merely Dr. Holdren's "personal opinion" and the "opinion" of "Ms. Becky Fried," respectively:

"OSTP's 2002 guidelines . . . state that opinions . . . are expressly excluded from the legal definition of 'information,' and are not subject to OSTP's Information Quality Act guidelines. Accordingly, the Information Quality Act does not apply to the opinions stated by Dr. Holdren and Ms. Fried in the polar vortex video and blog post, respectively. Accord-

---

[4] The quoted text can also be found at many web sites and in many news articles. *E.g.*, Matt Vespa, *WH Scrambles to Blame 'Polar Vortex' on Global Warming*, CNS News, Jan. 8, 2014 (http://cnsnews.com/mrctv-blog/matt-vespa/wh-scrambles-blame-polar-vortex-global-warming) (discussing Holdren's general argument that "more cold weather is coming - because of global warming"); Patrick J. Michaels & Paul C. "Chip" Knappenberger, *Hot Air About Cold Air*, Cato At Liberty, January 16, 2014 5:36PM (www.cato.org/blog/hot-air-about-cold-air).

[5] *See* OSTP, *We the Geeks: "Polar Vortex" and Extreme Weather*, Posted by Becky Fried on January 8, 2014 at 5:37 PM EDT (containing this exact language in the text of the blog post), available at http://www.whitehouse.gov/blog/2014/01/08/we-geeks-polar-vortex-and-extreme-weather .

[6] *See* Letter dated June 6, 2014 from Tamara Dickinson, Principal Assistant Director for Environment and Energy at OSTP, to Hans Bader, Competitive Enterprise Institute, at pg. 2, footnote 4 ("statements [that] are subjective opinions" are not covered by OSTP's information quality guidelines).

ingly, OSTP denies your request for information correction under the Information Quality Act." [7]

13)   On June 19, 2014, CEI appealed this decision, which was affirmed by OSTP in an August 4, 2014 letter reiterating that these statements were "opinion" not subject to the Information Quality Act.[8] The agency did so even though the statements were not accompanied by any such "opinion" disclaimer on OSTP's web site.  (The very Information Quality Act guidelines OSTP cited treat "Opinions" that "OSTP disseminates from its web page" as information covered by the Act, *except "where the presentation makes clear that the statements are subjective opinions . . . rather than facts."*[9])

**Plaintiff's FOIA Request**

14) On June 13, 2014, CEI sent OSTP a FOIA request seeking documents related to the Polar Vortex video, including records related to its production and its status as personal opinion.  In that request, CEI quoted Dr. Holdren's claim in the video that "a growing body of evidence suggests that the kind of extreme cold being experienced by much of the United States as we speak is a pattern that we can expect to see with increasing frequency as global warming continues," and Becky Fried's claim that "we also know that this week's cold spell is of a type there's reason to believe may become more frequent in a world that's getting warmer, on average because of greenhouse-gas pollution."[10]  It then sought:

---

[7] *See* Letter dated June 6, 2014 from Tamara Dickinson, Principal Assistant Director for Environment and Energy at OSTP, to Hans Bader, CEI, at pg. 2.

[8] *See* Letter dated August 4, 2014, from Rachael Leonard, General Counsel, to Hans Bader, CEI, at pg. 3 & fns. 14-15, *citing* OSTP's 2002 Information Quality Guidelines (available at www.whitehouse.gov/sites/default/files/microsites/ostp/ostp-iqg.pdf ).

[9] *See* OSTP's 2002 Information Quality Guidelines, entitled *Final Guidelines for Ensuring the Quality of Disseminated Information* (Oct. 1, 2002) at 8 (www.whitehouse.gov/sites/default/files/microsites/ostp/ostp-iqg.pdf) (emphasis added).

[10] *Id.* at 2.

"(a)  All documents referencing or discussing whether the above-quoted claim by Director
      Holdren is, or should be regarded as, the position or view of OSTP, or whether it is, or
      should be regarded as, the personal opinion of Director Holdren.

(b)  All documents related to the production of the video. That includes documents related
      to its cost of production, what agency resources were used in producing it, the
      amount of staff time that was spent producing it, and whose time was spent
      producing it.

(c)  All documents referencing or discussing whether the above-quoted claim by Ms.
      Fried is, or should be regarded as, the position or view of OSTP, or whether it is, or
      should be regarded as, the personal opinion of Ms. Fried."[11]

## Defendant's Response to the FOIA Request

15) In a letter dated July 9, 2014, OSTP acknowledged receiving CEI's "request on June 16,

2014," and assigning it tracking number "OSTP FOIA No. 14-66."  It stated that "OSTP con-

ducted a search of its records and located 11 pages responsive to your request. OSTP has en-

closed 11 pages.  OSTP has withheld portions of the enclosed pages under 5 U.S.C. §§

552(b)(5) and (b)(6)."

16) On August 4, 2014, CEI appealed OSTP's response to its request.  CEI appealed the adequa-

cy of OSTP's search as being inadequate, as evidenced by the fact that the 11 pages it re-

ceived did not even include responsive documents that likely existed, such as time records

and "documentation of agency resources expended on the video."

17) In a letter dated September 5, 2014, OSTP purported to "grant" CEI's appeal over the alleg-

edly inadequate search, by proceeding to "conduct an additional search."  It stated that it had

found  "47 additional pages of responsive material", but it refused to produce them.[12]  It re-

leased only its June 6 letter denying CEI's Information Quality Act request for correction

(which CEI had already received), and what OSTP's September 5 letter described as a "cal-

---

[11] *Id.*
[12] *Id.* at 2.

endar meeting" page (a page that bore the legend "nonresponsive" at its bottom). In an attempt to justify withholding the 47 additional pages, it stated that "these 47 pages have been withheld in full under 5 U.S.C. § 552(b)(5)."[13] Without any elaboration or specifics, OSTP stated that the entire 47 pages contained "no reasonably segregable factual or non-deliberative information responsive to your request."[14]

18) OSTP's claim of deliberative process privilege is directly at odds with its earlier claim that the statements at issue were the personal opinions of Dr. Holdren and Ms. Fried.

19) OSTP's letter never explained or identified what regulation or legal or policy matter these documents supposedly related to. To qualify for redaction or withholding under (b)(5) (FOIA's Exemption 5), communications must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1976). The "privilege does not protect a document which is merely peripheral to actual policy formulation." *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994), or is not "antecedent to the adoption of an agency policy," *Jordan v. U.S. Dept. of Transportation*, 591 F.2d 753, 774 (D.C. Cir. 1978). For example, something mundane like a contract to produce a video is not sufficiently policy-related to fall within the deliberative process privilege.[16] Nor is discussion exempt if it "mostly" relates to a position "already" reached by the communicants.[17] It failed to provide such an explanation even

---

[13] *Id.*

[14] *Id.*

[16] *Hennessey v. U.S. AID*, 121 F.3d 698, 1997 WL 537998, *5 (4th Cir. Sept. 2, 1997) (unpublished) ("construction scheduling dispute" that gave rise to legal claim against agency was not shielded by deliberative-process privilege because it did "not bear on a policy-oriented judgment of the kind contemplated by Exemption 5"; even if a "decision regarding such a matter "can be regarded as a 'policy,'" it is not the "'stuff of the deliberative process privilege'" if it is at the "very outer limits" of what is a policy).

[17] *See Houser v. Blank*, No. 10-3105, Slip Copy, 2013 WL 873793, *3 (S.D.N.Y. March 11, 2013); *Fox News Network, LLC v. U.S. Dept. of Treasury*, 911 F.Supp.2d 261, 275-76 (S.D.N.Y. 2012) (exemption does not cover inter-

though the burden of proof is on the agency to identify the larger policy-making process to which any withheld document contributes,[18] and prove all elements of the deliberative process privilege.[19]

20) OSTP's letter also did not contain any specifics on why it could not segregate and produce the factual portions of the 47 pages it claimed contained privileged material, even though the "government must show with reasonable specificity why a document cannot be further segregated,"[20] and cannot rest on a "conclusory assurance given by the [agency] that any factual or otherwise non-exempt material contained in its agency records is nonsegregable and privileged from disclosure."[21]

21) OSTP's letter did, however, indicate that its appellate process was over and that if CEI was dissatisfied, its only recourse was in court.[22]

### FIRST CLAIM FOR RELIEF
**Release Under FOIA of Responsive Records -- Declaratory Judgment**

22) Plaintiff re-alleges paragraphs 1-21 as if fully set out herein.

23) Plaintiff has sought and been denied access to responsive records that defendant concedes fall within the scope of its FOIA request.

24) The withheld records are not exempt from disclosure under FOIA.

---

nal discussion of agency positions if the discussion is about "how to explain an *existing* [rather than planned] agency policy or decision.").

[18] *Access Reports v. Dept. of Justice*, 926 F.2d 1192, 1196 (D.C. Cir. 1991).

[19] *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

[20] *Marshall v. F.B.I.,* 802 F.Supp.2d 125, 135 (D.D.C. 2011).

[21] *INFORM v. BLM*, 611 F.Supp.2d 1178, 1189 (D. Colo. 2009); *see API v. EPA*, 846 F.Supp. 83, 90 (D.D.C. 1994).

[22] OSTP's letter advised CEI that "If you consider this to be an inappropriate denial of your appeal, you may seek judicial review by a Federal District Court in any of the following places: (1) where you reside, (2) where you have your principal place of business, (3) in the District of Columbia, or (4) where the records are located." *Id.* at 2.

25) Defendant has wrongly withheld those records.

26) Plaintiff has exhausted its administrative remedies.

27) Plaintiff asks this Court to enter a judgment declaring that:

    ii. Defendant OSTP has failed to provide records responsive to plaintiff's request;

    ii. Defendant's refusal to produce the requested records is unlawful; and

    iii. Defendant must release the requested records.

## SECOND CLAIM FOR RELIEF
### Release Under FOIA of Responsive Records -- Injunctive Relief

28) Plaintiff re-alleges paragraphs 1-27 as if fully set out herein.

29) CEI is entitled to injunctive relief compelling OSTP to produce all records responsive to its request described, *supra*.

30) CEI asks this Court to enter an injunction pursuant to 5 U.S.C. § 552(a)(4)(B) enjoining defendant from further withholding responsive records and ordering OSTP to produce to CEI within 10 business days of the date of the order the requested records in their entirety.

31) In the alternative, CEI asks this Court to issue an injunction ordering OSTP to produce to CEI within 10 business days of the date of the order the requested records, along with a detailed *Vaughn* index setting forth the basis for any FOIA exemption it relies upon to redact any portion of any of the requested records.

32) Further, plaintiff requests that this Court retain jurisdiction to enforce the terms of the order as well as retain jurisdiction to conduct such further proceedings and award relief as may be necessary to resolve any breach of the order and to retain jurisdiction over any plaintiff's motion seeking judicial review of some or all withheld and/or redacted documents.

## THIRD CLAIM FOR RELIEF
### Costs And Fees

33) Plaintiff re-alleges paragraphs 1-32 as if fully set out herein.

34) Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States reasona-ble attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

35) This Court should enter an injunction ordering defendant to pay reasonable attorney fees and other litigation costs reasonably incurred in this case.

WHEREFORE, Plaintiff requests the declaratory and injunctive relief herein sought,

and an award for its attorney fees and costs and such other and further relief as the

Court shall deem proper.

Respectfully submitted this 29th day of October, 2014,

_____/s/_____
Hans Bader, D.C. Bar No. 466545
Sam Kazman, D.C. Bar No. 946376
1899 L Street, N.W., 12th Floor
Washington, D.C. 20036
(202) 331-2278

*Attorneys for Plaintiff*