UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Competitive Enterprise Institute,** | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil No. 14-cv-01806 (APM) |
| **Office of Science and Technology Policy,** | ) ) ) |  |
| Defendant. | ) ) |  |

**MEMORANDUM OPINION MODIFYING THE COURT'S MEMORANDUM
OPINION OF FEBRUARY 10, 2016, AND ORDER ON THE COURT'S
MARCH 23, 2016, ORDER TO SHOW CAUSE**

**I.    INTRODUCTION**

A familiar refrain in Freedom of Information Act cases is that "discovery is rare." That maxim derives from the principle that trial courts are to accord a presumption of good faith to agency affidavits that are relatively detailed and nonconclusory. Such affidavits cannot be rebutted by purely speculative claims about the existence or discoverability of other records. *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Based on those principles, this court initially denied Plaintiff Competitive Enterprise Institute's request for discovery. *See* Mem. Op., ECF No. 16, at 23-24.

But, as it turns out, this is the rare case where discovery is warranted. "Discovery should be permitted [in a FOIA case] . . . when a plaintiff raises a sufficient question as to the agency's good faith in processing documents in response to a FOIA request." *See Judicial Watch v. Dep't of State*, No. 13-1363, Mem. and Order, ECF No. 73, at 9 (D.D.C. May 4, 2016); *see also Judicial Watch, Inc. v. Dep't of State*, No. 14-1242, 2016 WL 1270980, at *1 (D.D.C. March 29, 2016)

("Where there is evidence of government wrong-doing and bad faith . . . limited discovery is appropriate."). Such a sufficient question exists here. Defendant Office of Science and Technology Policy's (OSTP) representations in this case about the scope and completeness of its searches have been, to say the least, inconsistent. Those inconsistencies have created a real question in the court's mind—sufficient to warrant limited discovery—about Defendant's good faith in processing Plaintiff's FOIA request. *See Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 182-83 (D.D.C. 2013) (finding that discovery was appropriate in light of agency's "inconsistent filings" regarding its searches). The court, therefore, modifies its Memorandum Opinion of February 10, 2016, and grants Plaintiff's motion for discovery.

## II.   DISCUSSION

The history of Defendant's search efforts makes self-evident the need for discovery in this case. In response to Plaintiff's FOIA request, Defendant initially identified only 11 pages of responsive records. None of those pages included a draft of the "OSTP Letter," that is, Defendant's three-page response rejecting Plaintiff's contention that the Information Quality Act required Defendant to correct statements posted to the White House's website positing a connection between the "polar vortex" and global warming. *See* Mem. Op. at 3-4, 6. Only after Plaintiff appealed the initial limited disclosure did Defendant conduct additional searches that turned up 47 draft pages of the OSTP Letter. *Id.* at 6-7. Defendant did not, however, turn these draft pages over to Plaintiff; instead, it invoked FOIA Exemption 5 to justify their withholding. *Id.* at 6. With its Motion for Summary Judgment, ECF No. 9, Defendant submitted an affidavit from Rachel Leonard, its Chief FOIA Officer, which stated that "the 47 pages remained internal to the Executive Branch," Mem. Op. at 7 (quoting Leonard Decl., ECF 9-1, ¶ 26). As the court observed in its Memorandum Opinion, Leonard's declaration left "two distinct impressions: (1) that there

were only 47 draft pages of the OSTP Letter and (2) that only Executive Branch officials had reviewed the draft pages." *Id.*

Both of those impressions turned out to be mistaken. Defendant disclosed in its Reply Brief that it had located an additional five pages of the draft OSTP Letter and that those pages had been shared by Dr. John Holdren, the head of OSTP, with Dr. Jennifer Francis, a climate scientist at Rutgers University, who in turn commented on the draft ("Francis Draft"). *Id.* In a Supplemental Affidavit, Leonard explained that Defendant had learned about the Francis Draft upon consulting with Dr. Holdren, *after* Defendant had filed its motion for summary judgment, "to confirm that all drafts had remained within the Federal Executive Branch." Def.'s Reply Brief, ECF No. 12, Suppl. Leonard Decl., ECF No. 12-1, ¶ 7. Leonard then declared that the total number of draft pages of the OSTP Letter had increased from 47 pages to 52 pages. *Id.* ¶ 9. Leonard's Supplemental Declaration left three distinct impressions: (1) that the Francis Draft was in substance similar to the final OSTP Letter; (2) that there were no more than 52 draft pages of the OSTP Letter; and (3) that the only person to receive a draft of the OSTP Letter outside of the Executive Branch was Dr. Francis.

All three of those impressions also turned out be mistaken. As it turns out, the "Francis Draft" bears no resemblance to the final OSTP Letter. *Compare* Def.'s Resp. to Order to Show Cause, ECF No. 20 [hereinafter Def.'s Resp.], Third Leonard Decl., ECF No. 20-2, Ex. B, ECF No. 20-3 [hereinafter Francis Dr.] *with id.*, Ex. A, ECF No. 20-3 [hereinafter Final OSTP Letter]. The three-page OSTP Letter is largely a legal explanation of why the Information Quality Act did not require Defendant to accede to Plaintiff's request for correction. *See* Final OSTP Letter. By contrast, the five-page Francis Draft is what Defendant now calls a "scientific analysis document,"

3

which focuses on the scientific literature that supports the statements that Plaintiff had challenged. Francis Dr.[1]

Defendant's representations about the number of Francis Drafts in its possession and the circulation of drafts outside the agency also turned out be inaccurate. In its Memorandum Opinion, the court ordered, over Defendant's opposition, that Defendant produce the Francis Draft. Mem. Op. at 17-22. In the course of complying with the court's Order, Defendant found two new drafts substantively similar to the Francis Draft. Dr. Holdren had sent one of them outside the Executive Branch to Dr. Rosina Bierbaum, a professor and former dean at the University of Michigan School of Natural Resources and Environment. Def.'s Resp., Ex. A, ECF No. 20-1. He had shared another with Dr. Peter Huybers, a Senior Science Analyst at OSTP. *Id.* According to Leonard, Defendant found these additional drafts during a search of Dr. Holdren's email, which OSTP apparently had not previously performed. Third Leonard Decl. ¶ 17. Defendant made the above facts known to Plaintiff in a cover letter dated March 4, 2016, which accompanied the court-ordered disclosure of the Francis Draft, as well as the voluntary disclosure of the two newly discovered drafts. *See* Def.'s Resp., Ex. A. The cover letter left the impression that Defendant finally had identified all drafts in its possession of the OSTP Letter and the Francis Draft. *See id.* (noting that Defendant had not found a response from Dr. Bierbaum "in a search of [Dr. Holdren's] records").

---

[1] Having now actually read the Francis Draft, and seeing that it bears little similarity to the final OSTP Letter, the court is troubled by Defendant's representation that the Francis Draft was merely "one version of the draft" OSTP Letter. Suppl. Leonard Decl. ¶ 7; *id.* ¶ 8 (stating that "Dr. Francis returned the five-page draft of the response letter"). That representation left the court with the impression that the Francis Draft simply was an earlier iteration of the OSTP Letter, not a scientific defense of Dr. Holdren's statements. As a consequence, in its Memorandum Opinion, the court observed: "Nothing apparent on the face of the final [OSTP Letter] would have demanded Dr. Francis' 'technical expertise related to the polar vortex.'" Mem. Op. at 21 (citing Leonard Supp. Decl. ¶ 8). While it may be true—and the court here is only speculating because it does not have the facts—that the scientific detail contained in the Francis Draft was rejected in favor of a more legally-focused response, that is not at all apparent from either the initial or supplemental Leonard declarations.

That impression, too, was wrong. The court learned through public sources that Defendant had uncovered the drafts shared with Drs. Bierbaum and Huybers and had disclosed them to Plaintiff. Surprised by this revelation, the court issued an Order to Show Cause asking why it should not reconsider its initial decision denying Plaintiff's request to take discovery. Order to Show Cause, ECF No. 19. After receiving the court's Order to Show Cause, Defendant conducted two brand new searches. Third Leonard Decl. ¶ 22. A search of Dr. Holdren's "Documents" file on his computer turned up an additional four "highly similar versions of Dr. Holdren's scientific analysis response"—in other words, drafts similar in substance to the Francis Draft. *Id.* And a search of Dr. Holdren's email uncovered six more drafts of the scientific analysis response. *Id.* ¶ 23. Assuming that each of the newly discovered drafts, like the Francis Draft, is five-pages long, the total number of draft pages of both the OSTP Letter and the Francis Draft in Defendant's possession is now at least 112 pages. When Defendant first responded to Plaintiff's FOIA request the reported number of drafts was zero.

As the foregoing recitation demonstrates, Defendant's representations that it conducted a reasonable search designed to locate *all* relevant records has proven to be inaccurate time and again. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (reversing grant of summary judgment where the affidavit did "not show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents"). Although Defendant has candidly acknowledged and apologized for the flaws in its search efforts, Def.'s Resp. at 2-3, 13, which the court appreciates, those expressions of regret come too late.

Defendant argues that the court should deny discovery because "FOIA requires a reasonable search, not a perfect one," *id.* at 3, and "[n]o FOIA search is exhaustive, nor is it expected to be exhaustive," *id.* at 13. The court does not take issue with those statements. But at

some point the government's inconsistent representations about the scope and completeness of its searches must give way to the truth-seeking function of the adversarial process, including the tools available through discovery. This case has crossed that threshold.

## III. CONCLUSION AND ORDER

Accordingly, the court modifies its Memorandum Opinion of February 10, 2016, and grants Plaintiff's motion to take limited discovery. Within fourteen days, Plaintiff shall meet and confer with Defendant and submit a proposed discovery plan to the court. Defendant shall file any objections to the proposed discovery plan within three days thereafter. The court then will issue an order governing discovery as well as further proceedings in this matter. The court reserves ruling on whether other sanctions are warranted until after the conclusion of discovery.

Date: May 9, 2016

Amit P. Mehta
United States District Judge